[Cite as *In re D.P.*, 2021-Ohio-3672.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE D.P.

A Minor Child

[Appeal by DE.P., Father]

:
:
:
:
:

No. 110379

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 14, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19908175

### *Appearances:*

Michael Drain, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant-father, De.P. ("Father"), appeals the juvenile court's decision terminating his parental rights and awarding permanent custody of D.P. to the

Cuyahoga County Division of Children and Family Services ("CCDCFS").[1]  He raises

the following assignment of error for review:

> 1. There was not a sufficiency of evidence for the trial court to find that an order of permanent custody was called for.

**{¶ 2}** After careful review of the record and relevant case law, we affirm the

juvenile court's judgment.

## I.  Procedural and Factual History

**{¶ 3}** On July 2, 2019, CCDCFS filed a complaint alleging that D.P., born June

9, 2019, was a dependent child as defined by R.C. 2151.04(D).  In support of its

complaint, the agency alleged the following particulars:

> 1.  Mother has four older children who are no longer in her care * * * due in part to [her] substance abuse and inability to provide a stable home * * *.
>
> 2.  Mother has a substance use disorder related to alcohol and marijuana.  Mother has been recommended for out-patient treatment but has not complied with the recommendations.
>
> 3.  Mother lacks appropriate judgment and parenting skills.  Mother has inappropriate conversations with her older child.  Additionally, she allows [Father] to provide care for [D.P.] despite knowing that he has previously abused another child.
>
> 4.  [Father] has not established paternity for [D.P.].
>
> 5.  On or about March 23, 2019, [Father] punched a 10-year old child in the face causing him to suffer a black eye.  * * *
>
> 6.  [Father] has failed to * * * support, visit, or communicate with [D.P.] since birth.

---

[1] The child's mother, K.M. ("Mother"), is not a party to this appeal.

{¶ 4} On August 2, 2019, CCDCFS filed a case plan. With respect to Father, the case plan required him to "complete and actively participate in parenting education classes" and "demonstrate adequate parenting abilities by using non-physical means of discipline." Father was also required to establish paternity, which he satisfied on August 29, 2019.

{¶ 5} On September 16, 2019, CCDCFS filed an amended complaint, alleging that D.P. was abused and dependent based on allegations that Mother and Father "have a domestically violent relationship, with at least one incident of domestic violence occurring in the presence of [D.P.]"

{¶ 6} On September 17, 2019, a magistrate committed D.P. to the emergency temporary custody of CCDCFS, finding, in pertinent part:

> The court finds that the continued residence of the child in the home of [Mother], at this time, will be contrary to the child's best interests and welfare. * * * The child is in the mother's custody. The mother has failed to comply with substance abuse and mental health treatment. Mother has recently began receiving mental health treatment. Mother has four older children. Three children are in the care of their fathers. The fourth child is in the custody of the [CCDCFS]. Mother has unresolved criminal charges. [Father] has a child in the protective supervision of [CCDCFS] as a result of [Father] punching [D.P.'s] 10-year old sibling. *See* Case Number AD19906048. Mother reports that [Father] is domestically violent. The parents to complete parenting education.

{¶ 7} On September 27, 2019, a magistrate adjudicated D.P. abused and dependent, and committed him to the temporary custody of CCDCFS. As it relates to this appeal, the court found that "Father is in need of parenting education, anger management education and domestic violence education." Accordingly, the court

ordered the agency to amend the case plan "to include domestic violence and anger management education for [Father]."[2]  The case plan was subsequently amended on October 10, 2019, to comply with the court's order.

{¶ 8} On October 17, 2019, CCDCFS filed a semiannual review report ("SAR") regarding D.P., whose case was initiated in July 2019, and his half-sibling, Z.M., whose case has been pending since October 2018.  Father is not the biological father of Z.M.  This SAR noted that Father "has been provided information to complete walk-in assessment to engage in parenting, anger management, and DV education with CEOGC.  [Father] has expressed interest in completing necessary steps to work toward reunification."  The SAR reported that Father established paternity and "is visiting with [D.P.].  [Father] is appropriate.  He was talking and cooing with the baby."  Regarding the ongoing concerns with domestic violence, however, the SAR provided as follows:

> [Father] is currently involved in a separate agency case where it was alleged that he hit a 10-year old.  [Mother] reported in September 2019 that [Father] hit her with a pistol.  [Father] reports that [Mother] was upset when she found out he was having a child with a separate woman and she is trying to ruin his reputation and get revenge on him.  It was additionally reported by [Mother] that there was an additional DV incident with [Father] as the perpetrator which occurred on [October 7, 2019].

{¶ 9} CCDCFS filed a second SAR on April 10, 2020, which stated that Father started "[parenting] classes beginning of March but delayed because of COVID-19."

---

[2]  On October 21, 2019, the trial court affirmed, approved, and adopted the magistrate's decision.

Father was "consistent with visits [with D.P.] up until February" and had one "phone call visit on 3/31/20." Additionally, the report stated that Father "shows he [h]as a bonding relationship with [D.P.]. [Father] plays with him and shows he is a loving caring father. He has also miss[ed] a few visits but he apologize[s] if he misses visits." However, the SAR further noted that Father "may be facing felonious assault charges" and "hasn't engaged in any services."

{¶ 10} On May 27, 2020, CCDCFS filed a "motion for first extension of temporary custody and request for specific findings." This motion states that temporary custody "was granted pursuant to an order journalized October 21, 2019 and will expire July 1, 2020. If granted, such custody will extend until January 1, 2021." As to Father, CCDCFS indicated that he "is engaging in parenting classes and he has stable housing. Father, however, has not started domestic violence classes." CCDCFS argued that "[a]lthough there has been progress made on the case plan since the original order of temporary custody, because all of the objectives have not yet been completed, the risk to the child has not been sufficiently reduced."

{¶ 11} On July 9, 2020, the magistrate issued an order holding CCDCFS's motion for extension of temporary custody in abeyance. Following a hearing held on September 3, 2020, the magistrate issued a decision extending D.P.'s temporary custody to January 1, 2021, finding an extension to be in D.P.'s best interest. As to Father, the magistrate determined that "he needs to complete anger management classes, domestic violence education, establish housing and maintain income to

support the child." The court adopted this magistrate's decision on September 23, 2020.

{¶ 12} On September 30, 2020, CCDCFS filed a motion to modify temporary custody to permanent custody. In support of the motion, the agency submitted the affidavit of Child Protection Specialist Christopher Weaver ("Weaver"), who averred, in pertinent part:

> 10. A case plan was filed with the juvenile court and approved which requires that Father complete a[n] anger management program, a domestic violence program, and complete a parenting education program;
>
> 11. Father has not completed any recommended case plan services;
>
> 12. Father has unstable housing and is unable to meet the child's basic needs;
>
> 13. Father has another child who was adjudicated due in part to [his] physical abuse of another child, and who is currently committed to the temporary custody of CCDCFS; and
>
> 14. Father has an unresolved criminal matter pending before the Cuyahoga County Court of Common Pleas for felonious assault.

{¶ 13} On November 30, 2020, the GAL filed a report and recommendation. In the report, the GAL described the scope and nature of her investigation and the factors she relied on when formulating her recommendation for the court. With respect to Father's relationship with D.P., the GAL stated that she

> had a chance to observe one of [Father's] in person visits with [D.P.]. The visit went well. [Father] was appropriate and was engaged with his child. The same was confirmed by the social worker, who regularly observes [Father's] visits, i.e. that [Father] is appropriate with his son and usually his visits go well.

{¶ 14} The GAL further reported the following:

According to the social worker, [Father] for the most part has been compliant with the case plan services. He has finished parenting classes and domestic violence counseling. The social worker was able to visit [Father] at his home and advises that it is appropriate. However, [Father] has not been able to verify his employment and his source of income. He claims to have his own landscaping business, but he has not been able to show any tax returns or any receipts, invoices, and payments associated with his business.

* * *

[Father] has an open case with the Cuyahoga County Common Pleas Court Case No. CR-20-652185, where he has been charged with felonious assault * * *. He has failed to appear in court regarding this matter, and as a result, on October 8, 2020, the court issued [a] capias against him. The charges against him have been pending for more than a year now.

[Father's] criminal charges along with some history of [his] inappropriate excessive disciplining of the children are of a concern for the undersigned. [Father] has another open case with this court where he was alleged to punch another child * * * into his face and causing a black eye. * * *

Further, another half-sibling of [D.P.] * * * has reported to the undersigned that [Father] hit her over the head with his boot, and that he hit her younger sister * * * with a slipper.

Based on the foregoing, the GAL concluded that it is "in the best interests of [D.P.] to grant [CCDCFS's] request for permanent custody."

{¶ 15} The juvenile court held a dispositional hearing on December 7, 2020. At the hearing, Weaver reiterated that he was assigned to this case in June 2020. Weaver described the circumstances that led to D.P.'s removal from Mother's home, including the allegations of excessive discipline, domestic violence, and felonious assault levied against Father. Weaver further explained the scope of Father's case

plan for reunification, including the requirements relating to parenting, anger management, and domestic violence.

{¶ 16} Weaver confirmed that while the motion for permanent custody was pending, Father completed the parenting and domestic violence portions of his case plan. In addition, Weaver testified that Father has appropriate housing, has engaged in appropriate visits with D.P., and has begun attending anger-management classes. Weaver clarified, however, that Father had yet to complete the anger-management program. Weaver also expressed concerns with Father's "income situation," stating that Father has not provided the agency with pay stubs or a work-place phone number, despite Weaver asking for this information.

{¶ 17} According to Weaver, D.P. has been with the same foster parents since September 2019. Weaver has visited the foster home monthly, and he testified that "[t]he home has been appropriate. There's been no concerns in the home." (Tr. 51.) The foster parents get along with D.P. "very well" and "they are attached." (Tr. *id.*). The foster parents are willing to provide a permanent home for D.P.

{¶ 18} Based on the forgoing, Weaver opined that it was in the child's best interests to have the agency awarded permanent custody, stating:

> In regards to [Father], [Father] entered into the case in February of 2019, and he has spent this time — it's taken him until November of 2020 for him to finally complete his services.
>
> He also has an open case with DCFS where he is still open.
>
> He also has a felonious assault charge that he is currently capias on resulting as I said a felonious assault.

We've had SARs. We also filed an extension for [Father} because he was completing his services.

We had an SAR again in I believe September where [Father] hadn't even started his domestic violence service, so that's why we went for [permanent custody].

(Tr. 53.)

{¶ 19} At the close of trial, the court heard from the child's GAL. Consistent with her written report, the GAL recommended that permanent custody be granted in favor of CCDCFS, stating, in relevant part:

With respect to [Father], I think his efforts to complete case plan services and I see that he has been trying to attend counseling, complete the parenting services, but I don't think that he benefitted from those services, and specifically I have a concern about his employment and source of income.

For the duration of his case with [D.P.] he hasn't shown me any documents that relate to his business or his source of income.

[Mother] at some point told me that he gets income from selling drugs.

Of course, I don't have any information but her allegation, but he has not shown to the Court or to me or to the social worker how he gets his income in order to support [his] children, and it is a concern to me.

He claims that he has a landscape business, and I understand that he needs to drive a car.

He told me recently that he doesn't have a valid driver's license and that he never had a driver's license and he never drove a car, but it appears that the social worker saw him driving a car.

* * *

So I don't know what sort of business he has and whether he would be able to support his children.

With respect to domestic violence and anger management, I still have concerns about [Father] even though he completed domestic violence classes because he has an open case for felonious assault. * * *

It's a crime of violence. I know that he has an open case with the Court because allegedly he hit the child and made the black eye, not the child, but the child's mother was home at the time [Father] resided.

One of the children who is my ward told me that [Father] hit her with a boot, with a shoe on her head and she was very specific that he hit her sister with a slipper over the head as well.

I have no reason not to believe the child.

It's a concern to me that [Father] uses physical force either to discipline children or to resolve issues with other people, and I'm not sure that he has benefitted or he has recognized in the first place that he has an issue.

So for those reasons I believe it's in the best interest of [D.P.] to grant permanent custody to [CCDCFS].

(Tr. 64-66.)

{¶ 20} On February 10, 2021, the juvenile court terminated Father's parental rights and granted permanent custody of D.P. to CCDCFS. The trial court found, by clear and convincing evidence, that despite the agency's reasonable efforts for reunification, D.P. could not be placed with either of his parents within a reasonable time or should not be placed with either of his parents, and that it is in the best interests of D.P. to be placed in the permanent custody of CCDCFS.

{¶ 21} Father now appeals from the trial court's judgment.

## II. Law and Analysis

{¶ 22} In his sole assignment of error, Father argues the juvenile court's judgment was not supported by sufficient evidence. Specifically, Father contends the record does not clearly and convincingly support the trial court's finding that the

child could not be placed with either parent within a reasonable time or should not be placed with either parents.

**{¶ 23}** CCDCFS may obtain permanent custody by first obtaining temporary custody of a child and then filing a motion for permanent custody under R.C. 2151.413. *See In re M.E.*, 8th Dist. Cuyahoga No. 86274, 2006-Ohio-1837. There is no dispute that the proper procedure occurred here. When CCDCFS files a permanent custody motion under R.C. 2151.413 after obtaining temporary custody, the guidelines and procedures set forth under R.C. 2151.414 apply.

> Courts apply a two-pronged test when ruling on permanent custody motions. To grant the motion, courts first must find that any of the factors in R.C. 2151.414(B)(1)(a)-(e) apply. Second, courts must determine that terminating parental rights and granting permanent custody to the agency is in the best interest of the child or children using the factors in R.C. 2151.414(D).

*In re De.D.*, 8th Dist. Cuyahoga No. 108760, 2020-Ohio-906, ¶ 16.

**{¶ 24}** "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24. "'Clear and convincing evidence' is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re T.S.*, 8th Dist. Cuyahoga No. 109957, 2021-Ohio-214, ¶ 23, quoting *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13. If the grant of permanent custody is supported by clear and convincing evidence, we

will not reverse that judgment. *In re J.J.*, 8th Dist. Cuyahoga No. 108564, 2019-Ohio-4984, ¶ 30.

## A. R.C. 2151.414(B)(1) Factors

{¶ 25} As stated, R.C. 2151.414(B) sets forth a two-pronged analysis the juvenile court is required to apply when ruling on a motion for permanent custody. R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the juvenile court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 26} In this case, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), that the child is not abandoned or orphaned, and has not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. The court further found, by clear and convincing evidence, that the child could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 27} When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.*, 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13. A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.*, 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

**{¶ 28}** In this case, the juvenile court found, pursuant to R.C. 2151.414(E)(1), that

> [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

**{¶ 29}** In challenging the forgoing finding, Father argues that as of the time of trial, he had stable housing and was compliant with the services that were required of him. He further asserts that because a parent should be entitled to "an adequate opportunity within the confines of the two-year statutory period to demonstrate his [or her] willingness to parent," "there was time left in the case for [him] to complete the case plan services and to provide documentation of his employment."

**{¶ 30}** After careful consideration, we conclude that the juvenile court's finding pursuant to R.C. 2151.414(E)(1) is supported by clear and convincing evidence. In this case, Weaver provided extensive testimony regarding the case plan created to remedy the issues that caused the child's removal. In this regard, the testimony presented at trial established that Father established paternity, demonstrated the ability to interact with D.P., completed a parenting course, and participated in domestic abuse counseling prior to the completion of trial. However, both the social worker and the child's GAL questioned whether Father had benefitted from his domestic violence services given the breadth of the allegations

of violence levied against Father during the pendency of this matter. The record further reflects, and Father does not dispute, that Father has failed to provide documentation of his employment as requested. (Tr. 16-17, 36-38.) Father had more than one year to provide proof of his employment with a landscape company and failed to do so. Thus, there remain issues concerning Father's ability to adequately support the child.

{¶ 31} Additionally, and perhaps most significantly, Father has not competed the mandated anger-management classes, which were included in Father's case plan in order to adequately address and remedy the anger issues that have led to incidents of violence. As discussed, this case was initiated, in part, following allegations that Father "punched a 10-year old child in the face causing him to suffer a black eye." Relatedly, the record reflects that in the midst of these custody proceedings, Father allegedly committed two separate acts of domestic violence. The first incident alleged that Father struck Mother with a pistol, while the second incident resulted in Mother sustaining a "black eye and swollen nose." The social worker also outlined other incidents of alleged excessive discipline and explained that Father has a pending felonious assault case with an outstanding arrest warrant for failure to appear in court. The events leading to this criminal indictment also arose during the pendency of this custody matter. Thus, Father's obligation to demonstrate his ability to remedy his anger issues was critical to the determination of whether D.P. could or should be placed in Father's custody. By failing to complete his anger-management courses in the year preceding the permanent custody trial, we are

unable to accept Father's position that the agency failed to present sufficient evidence regarding the applicability of R.C. 2151.414(B)(1)(a).

{¶ 32} Finally, this court is equally unpersuaded by Father's assertion that the trial court's judgment was rendered "before time had run to determine permanent custody." R.C. 2151.353(G) provides that the statutory term for a temporary custody order is one year. While the agency is permitted to seek up to two six-month extensions of temporary custody, the decision to exercise that statutory right is left in the sound discretion of the agency and is not mandated by statute. *See* R.C. 2151.415(A)(6) and (D)(1)-(4). *See also In re A.C.*, 2d Dist. Montgomery No. 26211, 2014-Ohio-4402, ¶ 18 (noting that "[the agency] was not required to seek an extension of temporary custody * * *[and] was entitled to move for permanent custody rather than to seek an extension.").

{¶ 33} In this case, the record demonstrates that the period of temporary custody far exceeded a period of one year based on the agency's decision to seek an extension of temporary custody in May 2020. However, because Father failed to take any additional steps towards his case plan in the following four months, the agency determined that it was necessary to seek permanent custody and not an additional extension of temporary custody. The fact that Father finally took the initiative to begin anger-management and domestic violence courses once the agency pursued permanent custody does not negate the evidence demonstrating his failure to complete the anger-management program by the time trial commenced. *See In re A.L.A. and A.S.A.*, 11th Dist. Lake Nos. 2011-L-020 and 2011-L-021, 2011-

Ohio-3124, ¶ 108 (A parent "is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal."). There is no evidence in the record that it would be beneficial to D.P. to allow Father to have additional time to try to achieve what he already should have accomplished.

{¶ 34} Accordingly, we find the evidence supports the trial court's application of R.C. 2151.414(E) and its finding pursuant to R.C. 2151.414(B)(1)(a) that D.P. could not be returned to Father's custody within a reasonable time or should not be placed with Father.

## B. R.C. 2151.414(D)(1) Best-Interest Factors

{¶ 35} We review a juvenile court's determination of a child's best interests under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} In determining the best interests of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 37} Although a juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. We have previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Moreover, the Ohio Supreme Court has clarified that

R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires.

*In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 31.

{¶ 38} In this case, the court expressed that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing the child's best interests. Based on this record, we do not find that the juvenile court abused its discretion in

determining that permanent custody was in the child's best interests. The court was provided with extensive testimony regarding D.P.'s need for permanency, D.P.'s positive bond with his current foster family, and Father's failure to fully satisfy the objectives of his case plan. There remain ongoing concerns with Father's ability to provide a permanent and safe home for D.P. Moreover, the court was guided by the recommendation of the GAL, who spoke on behalf of the young child and recommended that it was in the child's best interests to grant the agency permanent custody. Accordingly, we conclude that the juvenile court's termination of parental rights and award of permanent custody of the child to CCDCFS is supported by clear and convincing evidence in the record.

{¶ 39} Father's sole assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS;
LISA B. FORBES, J., DISSENTS WITH SEPARATE ATTACHED OPINION

LISA B. FORBES, J., DISSENTING:

{¶ 41} I respectfully dissent from the majority's opinion and would instead find that the juvenile court abused its discretion when it terminated Father's parental rights. There was not clear and convincing evidence in the record to support the trial court's conclusion that Father is "still demonstrating outbursts of anger."

{¶ 42} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford*, 1691 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 43} In the case at hand, under R.C. 2151.414(B)(1)(a) and 2151.414(E)(1), the juvenile court found that D.P. "cannot be placed with [Father] within a reasonable time or should not be placed with [Father]" because Father "has failed continuously and repeatedly to substantially remedy the conditions causing [D.P.] to be placed outside [D.P.'s] home." Under R.C. 2151.414(D)(1), the juvenile court found that permanent custody to CCDCFS was in D.P.'s best interest.

{¶ 44} In the original complaint, CCDCFS alleged that the following "conditions" involving Father contributed to D.P. being placed outside of his home: Father had not established paternity; Father "punched a 10-year old child in the face"; and Father failed to "support, visit, or communicate with" D.P. It is

undisputed that Father established paternity when D.P. was two months old, and since then Father has visited and communicated with D.P. during regularly scheduled times. CCDCFS amended the complaint to add that D.P.'s mother reported that she and Father have a domestically violent relationship. I believe it is important to note that D.P.'s mother and Father do not live together, and D.P. has never lived with Father.

{¶ 45} At the dispositional hearing, the evidence showed that Father was "compliant with the services." Specifically, Father completed two of three ordered classes and was on target to complete the third. Asked if Father is "doing what you've asked him to do," Weaver answered, "Yes, for right now." Weaver also testified that Father's housing was appropriate for D.P. The evidence in the record shows that Father acts appropriately and engages with D.P. during visitation.

{¶ 46} The crux of this case lies in the juvenile court's finding that Father "has failed to benefit from the domestic violence program as he is still demonstrating outburst of anger." As noted by the majority, it is true that Weaver and the GAL also concluded that Father was not benefitting from his anger management and domestic violence classes. However, when carefully reviewing the record, I do not find that this conclusion is supported by any evidence.

{¶ 47} The majority of the evidence in the record about remedying the conditions causing D.P. to be placed outside of his home, including the SARs, case plan objectives, hearing testimony, and the juvenile court's findings, relate to D.P.'s mother and not to D.P. or to Father. The sparse evidence concerning Father is that,

once paternity was established, he visited with D.P., behaved appropriately during these visits, and complied with his case plan.

{¶ 48} While the record includes CCDCFS's recounting of the mother's unsubstantiated allegations of domestic violence committed by Father, the allegations involved conduct that occurred long before Father participated in domestic violence classes. There is no evidence to show that Father continued to act violently after participating in and completing the classes. As for Father's pending assault charge, it is based on an incident that allegedly occurred in October 2019. The evidence showed that Father began taking the classes assigned in his case plan in early 2020 but was delayed because of Covid-19. Since Father has participated in classes, the record is devoid of any evidence of ongoing "outbursts of anger."

{¶ 49} Additionally, the evidence shows that on September 23, 2020, the court granted an extension of temporary custody through January 1, 2021, to, in part, allow Father to complete his case plan objectives. However, seven days later, on September 30, 2020, CCDCFS filed a motion to modify temporary custody to permanent custody.

{¶ 50} In my opinion, the juvenile court abused its discretion by granting this motion before the record was fully developed as to how the R.C. 2151.414 factors apply to D.P. and to Father. In other words, the record does not contain clear and convincing evidence that: 1) D.P. cannot be placed with Father within a reasonable time or should not be placed with Father; and 2) terminating Father's parental rights is in the best interest of D.P. Father has made significant progress on his case plan,

and there is reasonable cause to believe that D.P. will be reunified with Father.  *See In re N.B.,* 8th Dist. Cuyahoga No. 81392, 2003-Ohio-3656, ¶ 13 (not extending temporary custody beyond the two-year "sunset" date in R.C. 2151.415(D)(4) "is not only contrary to what the legislature intended; it would offend a parent's constitutional right to due process"); *In re D.F.,* 2019-Ohio-3046, 140 N.E.3d 1081, ¶ 56 (8th Dist.) ("This is not a case in which the 'remedy of last resort' — termination of Mother's parental rights and granting permanent custody to CCDCFS — has been shown by clear and convincing evidence to be in the best interest of these children.").

{¶ 51} Ohio courts have consistently recognized that the "termination of parental rights is the family law equivalent of the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).  *See also Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.").

{¶ 52} "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.*  The United States Supreme Court has also held that termination of parental rights "destroy[s] permanently all legal recognition of the parental relationship." *Rivera v. Minnich*, 483 U.S. 574, 580, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

{¶ 53} Accordingly, I would find that the court abused its discretion when it terminated Father's parental rights because there was not clear and convincing

evidence in the record to support this decision, and I would reverse the trial court's judgment.