[Cite as *In re A.A.-V.*, 2022-Ohio-1947.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.A.-V.                    :
                                 :
A Minor Child                    :          No. 111257
                                 :
[Appeal by N.V., Father]         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 9, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20908804

---

### *Appearances:*

Sylvester Summers, Jr., Co., LPA, and Sylvester Summers, Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-Father, N.V. ("Father") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of his minor child, A.A.-V., to appellee, the Cuyahoga County Department

of Children and Family Services ("CCDCFS" or the "agency"). For the reasons that follow, we affirm the juvenile court's judgment.

**Procedural and Factual History**

{¶ 2} On October 19, 2020, CCDCFS filed a complaint alleging that A.A.-V., born March 20, 2020, was a neglected and abused child as defined by R.C. 2151.031(B), 2151.031(C), 2151.03(A)(2) and 2151.03(A)(3). This was a refiled complaint, because a previous complaint was unable to be resolved within the statutory time frame. The complaint averred that on or about June 27, 2020, A.A.-V. was admitted to the hospital and diagnosed with a subdural hematoma with significant brain swelling, bilateral retinal hemorrhaging and malnourishment. Additionally, it was discovered that A.A.-V. had two rib fractures that were in the process of healing. Medical professionals determined that these injuries were consistent with nonaccidental trauma.

{¶ 3} The complaint alleged that A.A.-V. was in the primary care of Mother[1] and Father, when these injuries occurred. Both Mother and Father faced child endangering charges that were pending at the time the complaint was filed. Mother and Father were in custody pending resolution of their cases.

{¶ 4} The agency further alleged that the parents had failed to ensure that the child receive necessary medical care and that the home the family was living in was unsanitary, inappropriate, and unstable.

---

[1] Mother did not appeal the juvenile court's grant of permanent custody and is therefore not the focus of this opinion.

{¶ 5} The agency also filed a renewed motion for predispositional temporary custody of A.A.-V. The agency had previously filed for predispositional temporary custody that had been granted on or about July 20, 2020. The child remained in the agency's custody at the time of this new filing, with her maternal grandmother as custodian. The juvenile court granted the agency's renewed motion for predispositional custody on October 19, 2020.

{¶ 6} At a hearing on November 18, 2020, Father denied the allegations in the complaint. The case was set for an adjudicatory hearing on January 13, 2021.

{¶ 7} At the January 13, 2021 hearing, Father again denied the allegations in the complaint. After hearing testimony, the juvenile court found the allegations were proven by clear and convincing evidence and proceeded to adjudicate A.A.-V. neglected and abused. The parties agreed to proceed immediately to the dispositional hearing. At that time, the court noted that A.A.-V. had a stroke and that the swelling in her brain necessitated doctors temporarily removing a portion of her skull. A.A.-V. wore a helmet to protect her brain. The juvenile court noted that A.A.-V. was receiving physical therapy. At the time of the hearing, A.A.-V. had a splint on her left hand and healed sufficiently to no longer needing to wear a helmet. Mother and Father stipulated to a disposition of temporary custody to the agency. Father and Mother remained incarcerated at the time of the hearing.

{¶ 8} The agency's case plan called for Father to establish safe, stable housing; be able to meet the child's basic, emotional, and medical needs; obtain and maintain employment; parenting education; complete a nurturing parent program;

and complete individual counseling to address anger management, violent aggressive tendencies, and impulse control issues.

{¶ 9} On February 26, 2021, the agency filed a motion to modify temporary custody to permanent custody. Father remained incarcerated during this time and had not engaged in services.

{¶ 10} On November 22, 2021, Father pled guilty to two counts of child endangering under R.C. 2919.22(A), felonies of the third degree for the incident involving A.A.-V. Father remained incarcerated.

**Dispositional Hearing**

{¶ 11} The juvenile court held the hearing on the agency's motion for permanent custody on December 13, 2021. Father was present via phone. Father's attorney requested a continuance. He noted that Father had recently pled guilty to the charges associated with A.A.-V. and hoped to receive probation. He wanted more time to complete case-plan goals. Mother did not appear for court. Her attorney represented that Mother had mistaken the date and was working. Mother's attorney asked for a continuance, also noting that Mother should be allowed to finish her case-plan objectives and noting that it had not been two years yet. The juvenile court denied the motions, and the case proceeded to trial.

{¶ 12} According to Michelle McCracken ("McCracken"), a social worker with the agency, A.A.-V. became involved with the agency when she was taken to the hospital and diagnosed with shaken-baby syndrome. As a result, A.A.-V. suffered a number of injuries, as previously described. Per McCracken, the stroke affected her

ability to control the left side of her body. A.A.-V. participated in physical therapy to address this issue. A.A.-V. was required to take seizure medication and needed to be monitored for seizures and seizure activity. McCracken noted that A.A.-V. was not speaking at the rate expected for her age and was therefore being seen by Help Me Grow to monitor her speech.

{¶ 13} In addition to the diagnosis of shaken-baby syndrome, McCracken noted that A.A.-V. also had broken ribs when she was first hospitalized that were in the process of healing. A.A.-V. was also malnourished and behind in her immunizations and doctors' visits. It was also discovered that the home conditions were deplorable, unsanitary, and unsafe.

{¶ 14} The agency created a case plan for Father that called for him to complete parenting programs, domestic violence classes, and a mental-health assessment.

{¶ 15} As of the hearing, Father had not engaged in any case-plan services and was still in the county jail awaiting sentencing.

{¶ 16} McCracken noted that A.A.-V. has been placed with her maternal grandmother since July 2020. A.A.-V. was very bonded to the maternal grandmother and her partner, as well as her partner's two children. Maternal grandmother had A.A.-V. on a schedule and ensured that all of her medical needs were met, including routine visits to a neurologist, physical and occupational therapy, and monitoring her for speech therapy. A.A.-V. had medical appointments every week.

{¶ 17} McCracken averred that the agency looked at placing A.A.-V. in the legal custody of maternal grandmother and her partner or the paternal grandparents. Maternal grandmother was in favor of taking permanent custody of A.A.-V., but not legal custody given the parents' retention of residual parental rights. Maternal grandmother was not comfortable with either Mother or Father having unsupervised access to the child. Maternal grandmother was also under the impression she would be able to receive more assistance as an adoptive parent versus a legal custodian, which was a concern because of A.A.-V.'s many special needs. With respect to the paternal grandparents, they were willing to take legal custody of the child; however, the agency determined that moving A.A.-V. from the maternal grandmother's home would be too disruptive for the child.

{¶ 18} The agency, according to McCracken, believed that permanent custody was in the best interest of A.A.-V. because the child had a safe, secure placement with her maternal grandmother; that maternal grandmother was capable of meeting the child's special needs. McCracken did not believe that Father could meet A.A.-V.'s basic needs. Even if Father were to receive probation, McCracken believed that it would take Father longer than six months to complete case-plan goals and to provide some stability for A.A.-V. or meet just her basic needs.

{¶ 19} After hearing the testimony, the juvenile court took the case under advisement. On January 12, 2022, the juvenile court granted the agency's request for permanent custody.

{¶ 20} Father appeals assigning the following error for our review.

## Assignment of Error

The trial court erred in awarding permanent custody to the CCDCFS as the CCDCFS failed to show by clear and convincing evidence that adequate grounds existed for a grant of permanent custody and therefore such decision was contrary to the manifest weight of the evidence.

## Law and Analysis

{¶ 21} In his sole assignment of error, Father argues the juvenile court erred in granting permanent custody to the agency because the decision is not supported by clear and convincing evidence.

{¶ 22} Preliminarily, we note that a parent has a fundamental right to raise and care for his or her child. *In re V.G.*, 8th Dist. Cuyahoga No. 110609, 2022-Ohio-191, ¶ 24; citing *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. Further, it has long been recognized that the termination of parental rights is "the family law equivalent of the death penalty in criminal case." *Id.,* citing *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061 and 103367, 2015-Ohio-4991, citing *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶ 23} A juvenile court's decision granting permanent custody will not be reversed if it is supported by clear and convincing evidence. *In re Ka.R.*, 8th Dist. Cuyahoga No. 110504, 2021-Ohio-4125, ¶ 29 citing *In re AR.S.*, 2021-Ohio-1958, 174 N.E.3d 28, ¶ 28 (8th Dist.); citing *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-

Ohio-1560, ¶ 28. Clear and convincing evidence is a degree of proof that is more than a mere preponderance of the evidence but is not proof to the extent necessary to find an issue beyond a reasonable doubt in criminal cases. *State v. Jackson*, 8th Dist. Cuyahoga No. 110621, 2021-Ohio-4320, ¶ 27, citing *State v. Mitchell*, 2019-Ohio-2465, 139 N.E.3d 556, ¶ 16 (2d Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). It is a degree of proof that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.*

**{¶ 24}** Termination of parental rights is statutory and governed by R.C. 2151.414. *In re G.L.*, 8th Dist. Cuyahoga No. 110284, 2021-Ohio-2273, ¶ 37, citing *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. Courts apply a two-part test in determining whether to award permanent custody to a public children's service agency. *Id.*

## First Prong:  R.C. 2151.414(B)(1)(a)-(e)

**{¶ 25}** Under the first prong, the juvenile court must establish one of the following five factors by clear and convincing evidence:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

{¶ 26} Only one of the above-listed factors needs to be present to satisfy the first prong of permanent custody analysis. R.C. 2151.414(B)(1); *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28.

{¶ 27} In this instance, the juvenile court determined that subsection (a) was satisfied in that

[t]he child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parent.

{¶ 28} Under R.C. 2151.414(B)(1)(a), a public children's services agency may take permanent custody of a child who has been in temporary custody for fewer than 12 of the past 22 months when it is established that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the parents. R.C. 2151.414(B)(1)(a); *see also In re D.P.,* 8th Dist. Cuyahoga No. 110379, 2021-Ohio-3672. To determine whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors listed in R.C. 2151.414(E). *In re D.P.* at ¶ 27, citing *In re A.V.,* 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.,* 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.,* 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13. The court need only find that one of the factors in R.C. 2151.414(E) is present to find that a child cannot or should not be placed with a parent. *Id.,* citing *In re Ca.T.,* 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.,* 8th Dist. Cuyahoga Nos. 102903, 103061 and 103367, 2015-Ohio-4991, at ¶ 42.

{¶ 29} In this case, the juvenile court found, pursuant to R.C. 2151.414(E)(1), (5) and (6) that

[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

Father was convicted of two counts of child endangering, a violation of section 2919.22 of the Ohio Revised Code. Father is currently incarcerated.

{¶ 30} The juvenile court's finding that Father was convicted of two counts of child endangering under R.C. 2919.22 was sufficient to establish that A.A.-V. could not or should not be placed with Father pursuant to R.C. 2151.414(E). The fact that he was also incarcerated and had not been able to complete any case-plan goals provided further support for the trial court's decision.

{¶ 31} Father argues that the agency could have requested an extension of temporary custody giving him more time to complete case-plan goals. Father hoped to receive probation on his case, giving him an opportunity to complete the case plan.[2] While it is within the power of the juvenile court to extend temporary custody to a total of two years, the decision is one that is left to the sound discretion of the agency and is not mandated by statute. *In re D.P.*, 8th Dist. Cuyahoga No. 110379, 2021-Ohio-3672, at ¶ 32. In the instant case, Father was incarcerated for the entirety of this case. Even if Father had been sentenced to probation on the child endangering charges, McCracken believed it would take Father more than six months to be able to meet A.A.-V.'s *basic* needs. Given the significant special needs

---

[2] Subsequent to the filing of this appeal, Father was sentenced to an aggregate term of 60 months on the charges. His case is pending appeal to this court.

A.A.-V. has due to her condition, it was within the agency's discretion to determine that extending temporary custody would not lead to Father being able to take custody within a reasonable time.

{¶ 32} Accordingly, we find the evidence supports the juvenile court's application of R.C. 2151.414(E) and its finding pursuant to R.C. 2151.414(B)(1)(a) that A.A.-V. could not or should not be returned to Father's custody within a reasonable time.

## Second Prong:  R.C. 2151.414(D)

{¶ 33} The second prong of permanent custody analysis requires the juvenile court to assess whether it has been established by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child.  We review a trial court's best interest determination under R.C. 2151.414(D) for an abuse of discretion.  *In re Ka.R.*, 8th Dist. Cuyahoga No. 110504, 2021-Ohio-4125, at ¶ 41, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.  An abuse of discretion suggests that the court's decision was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 34} Pursuant to R.C. 2151.414(A)(1), a juvenile court must consider all relevant factors in determining the best interest of the child, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 35} The Ohio Supreme Court recently addressed what the word "consider" means in this context, noting that

R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (3). Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors.

*In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31

{¶ 36} In the instant case, the juvenile court's journal entry noted that after considering all of the best interest factors, it

finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

{¶ 37} Based on this record, we do not find that the juvenile court abused its discretion in determining that permanent custody was in the child's best interests. The court was provided with testimony regarding A.A.-V.'s extensive special needs, her bond with her maternal grandmother, and her progress given maternal grandmother's ability to meet A.A.-V.'s basic and special needs.

{¶ 38} Father concedes that the juvenile court's decision was based on a comprehensive analysis of the best interest factors, focused mostly on the stability of A.A.-V. Nevertheless, Father argues that the juvenile court's decision that permanent custody was in the best interest of the child was not based on clear and convincing evidence, because, given more time, he could provide a stable environment for the child.

{¶ 39} To the contrary, Father was incarcerated for the entirety of this case, and even if he had been released from jail, the record reflected he would have been starting from square one, addressing everything on his case plan within the limited time the agency had left to extend temporary custody.

{¶ 40} Based on the foregoing, the juvenile court did not abuse its discretion when it determined that permanent custody was in the best interest of the child.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR