[Cite as *In re K.R.*, 2023-Ohio-936.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE K.R.                                  :

                                            :                    No. 112036

A Minor Child                               :

                                            :

[Appeal by C.P., Mother]                    :

_____

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 23, 2023

_____

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-22901691

_____

### *Appearances:*

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother C.P. ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division ("juvenile court"), granting permanent custody of her minor child, K.R., to appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency"). For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} The agency first became involved with Mother[1] on October 31, 2019, when it filed complaints alleging abuse and neglect for K.R.'s three siblings, R.A., d.o.b. 3/23/15; Ke.R., d.o.b. 8/31/2017; and E.R., d.o.b. 5/20/2019. Mother stipulated to an amended complaint that alleged the following:

1. On or about October 30, 2019, there was an incident where the home was raided by the human trafficking task force. The children were present during the raid.

2. Mother has a substance abuse issue and needs to engage in services.

3. Mother needs to use appropriate judgement to keep the children safe.

4. Mother needs to provide for the children's medical and developmental needs.

5. Mother needs to ensure that only appropriate individuals have access to the children.

6. Mother lacks safe, stable, and appropriate housing with which to care for the children.

{¶ 3} Almost two years later on May 3, 2021, the agency was granted permanent custody of R.A., Ke.R., and E.R. The juvenile court found that Mother attended two drug treatment programs. She was discharged from one due to lack of participation and during the other, she frequently attended while under the influence of drugs and/or alcohol. Mother also provided numerous excuses for not

---

[1] L.R., the alleged father of K.R., is not party to the appeal. L.R. is also the father of E.R. and the alleged father of Ke.R.

submitting to random urine screens despite receiving bus tickets from CCDCFS and a neighborhood collaborative.

{¶ 4} Mother also refused to complete an updated mental health assessment or other mental health services. She told the social worker that she did not have a problem and did not need services.

{¶ 5} Mother completed two parenting programs but could not demonstrate that she benefited from the services. After completion of the two programs, Mother fed R.A. inappropriate food after he had a tonsillectomy that caused R.A. to require medical attention.[2] Also, a neighborhood collaborative offered to help Mother complete her case plan, but Mother refused to accept their help. Finally, Mother was unemployed throughout the case, which demonstrated her inability to provide for the basic needs of the children. Given the foregoing, the juvenile court found that granting permanent custody to the agency was in the best interest of the children.

{¶ 6} In February 2022, the agency received notice from a local hospital that Mother had given birth to another child, K.R. On February 18, 2022, CCDCFS filed a complaint alleging that K.R., d.o.b. 2/16/22, was dependent, as defined in R.C. 2151.04(D). The complaint also contained a prayer for permanent custody to the agency. The complaint averred that Mother's three oldest children were previously adjudicated abused and neglected and ultimately placed in the

---

[2] The specifics of the event were not detailed in the juvenile court's journal entry for the siblings; however, at the permanent custody trial for K.R., the social worker elaborated that R.A. had had a tonsillectomy.

permanent custody of CCDCFS, due to Mother's substance abuse issues, lack of stable and appropriate housing, and her inability to meet the children's basic needs. Further, Mother continued to have a substance abuse issue and was diagnosed with an alcohol use disorder. The complaint raised the issue that Mother had not benefited from past substance abuse counseling. Finally, the complaint alleged that Mother lacked the judgment and decision-making skills necessary to provide appropriate care and supervision for the child. Mother did not obtain prenatal care for K.R., and Mother did not benefit from parenting education in the past.

{¶ 7} Along with the complaint, CCDCFS filed a motion for predispositional temporary custody of K.R. to the agency. In support, the agency indicated that K.R. was ready for discharge from the hospital and that the conditions listed in the complaint required the child to be placed in the emergency temporary custody of the agency. The juvenile court granted predispositional temporary custody to CCDCFS.

{¶ 8} Although the agency requested permanent custody, it also included reunification with Mother in the case plan with goals for her to complete. Her goals included parenting classes; a drug and alcohol assessment; reentry into and completion of an inpatient substance abuse treatment program; demonstrate clean and sober behavior through participation in a 12-step program; provide random urines as requested; domestic violence counseling; and address mental health issues including obtaining a full evaluation to assess her ability to properly raise an infant.

{¶ 9} On June 24, 2022, Carla Golubovic, the guardian ad litem ("GAL") for K.R., issued her report on the case. The GAL had also been assigned to the three

older siblings' cases and was familiar with the case history. The GAL reported that K.R. was in foster care with his siblings and was well-adjusted in the home. Mother was in the process of completing case plan goals, including substance abuse treatment and attending weekly visits. At the time of the report, Mother and alleged Father, L.R., were living together and alleged Father was employed. Based on the foregoing, the GAL recommended that the agency receive temporary custody because statutory time remained for the parents to complete the case plan objectives.

{¶ 10} On August 17, 2022, the juvenile court held both the adjudicatory and dispositional hearings. The state called as its sole witness, Lee Barbee ("Barbee"), a social worker with CCDCFS. Barbee had also been assigned to the siblings' cases. Barbee first summarized Mother's conduct and completion of case plan goals when K.R.'s siblings were in custody.

{¶ 11} During the adjudication hearing, the state introduced as exhibits the journal entries that found K.R.'s siblings abused and neglected and the journal entries granting permanent custody to the agency. After the agency obtained permanent custody in May 2021, Barbee remained in contact with Mother until September or October 2021. During that time, Mother was appealing the permanent custody ruling and maintained a visitation schedule with her older children. Barbee did not observe Mother under the influence during those visits; however, Mother was not enrolled in substance abuse treatment during that time.

{¶ 12} After the agency was notified of K.R.'s birth, Barbee reestablished contact with Mother. Mother admitted to him that she had no prenatal care while pregnant with K.R. Nevertheless, K.R. was born healthy and did not test positive for any drugs of abuse. Mother likewise did not test positive for drugs or alcohol at K.R.'s birth. However, Barbee visited Mother's home and found that there were no provisions in preparation for K.R.'s birth. Mother claimed that she did not know she was pregnant.

{¶ 13} The state rested as to the adjudicatory phase of the trial. Mother did not present any witnesses. The juvenile court found K.R. to be a dependent child.

{¶ 14} Prior to presenting testimony on the dispositional phase, the state requested that the testimony and evidence introduced during the adjudicatory phase be incorporated into the dispositional hearing. Mother did not object, and the juvenile court granted the motion.

{¶ 15} Barbee again addressed the court and indicated Mother's case plan included parenting education, substance abuse and mental health treatment, domestic violence education, and establishing the ability to meet the basic needs of the child.

{¶ 16} At the time of the hearing, Mother was engaged in parenting classes and only had one or two more classes to complete the program.

{¶ 17} Mother was also referred to a dual diagnoses program to address substance abuse and mental health issues. The program was designed to address substance abuse first. After successful completion, Mother would be referred for

mental health services. Unfortunately, Mother tested positive for alcohol twice during the program, once in June 2022, and again in July 2022. Because the positive tests occurred within four weeks of each other, the protocol was for a team meeting to be scheduled to discuss with Mother whether to extend her treatment program or move her to a different level of care. Although she was informed of the meeting, Mother did not attend.

{¶ 18} Sometime after the GAL's initial report in June 2022, Mother and alleged Father lost their housing. According to Barbee, Mother told him the landlord sold the house suddenly, so they had to move. At the time of the hearing, Mother was staying with K.R.'s maternal grandmother, while alleged Father was residing in a hotel. Mother applied for housing with CMHA, however, her application was denied. Barbee indicated this was because Mother added alleged Father to the housing application. Barbee did not address why that was a disqualifying issue. Regardless, Mother would have to reapply, and it was estimated it would take eight to nine months for Mother to obtain housing. Furthermore, Barbee indicated it would be unsuitable to place K.R. with Mother and maternal grandmother because maternal grandmother had prior history with the agency. Barbee was not asked to elaborate on the nature of that history or why maternal grandmother's home would be unsuitable for K.R.

{¶ 19} Domestic violence education was also on the case plan but had not been completed.

{¶ 20} Barbee reported that K.R. was in foster care with his siblings and doing well. K.R. had to have surgery for acid reflux and was in the hospital. Although notified of this, Mother had not visited K.R. in the hospital. However, Mother regularly attended all other visits and was appropriate with K.R.

{¶ 21} After the close of testimony, the juvenile court asked the GAL for her recommendation. Based on the testimony at trial, the GAL changed her recommendation from temporary custody to the agency to permanent custody. She indicated that the parents had not changed their behavior since the three older children were in custody. Given the history, she believed that Mother still struggled with alcohol addiction, and had struggled for years. Further, there had not been significant progress. Mother had to begin substance abuse treatment again for the third time. As a result, the GAL felt that permanent custody was in K.R.'s best interest.

{¶ 22} The trial court took the case under advisement and later granted permanent custody of K.R. to CCDCFS.

{¶ 23} Mother now appeals assigning the following errors for our review.

### Assignment of Error No. 1

The trial court abused its discretion when it failed to base its decision upon the best interests of the child.

### Assignment of Error No. 2

The findings by the trial court granting permanent custody were against the manifest weight of the evidence.

## Assignment of Error No. 3

The findings by the trial court granting permanent custody were not supported by sufficient evidence.

## Law and Analysis

{¶ 24} Preliminarily, we note Mother does not challenge the court's finding that K.R. was dependent. Mother only challenges the juvenile court's decision to place K.R. in the permanent custody of CCDCFS. Accordingly, we will confine our review to the permanent custody decision.

{¶ 25} It is well settled that a parent has a fundamental right to raise and care for their child. *In re G.W.*, 8th Dist. Cuyahoga No. 110938, 2022-Ohio-2581, ¶ 29, citing *In re L.M.*, 8th Dist. Cuyahoga No. 106072, 2018-Ohio-963, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. Nevertheless, the government, through children's services agencies, has "broad authority to intervene when necessary for a child's welfare." *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 35, citing at ¶ 28.

{¶ 26} The goal when parental rights are terminated is to "create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re V.C.* at ¶ 35, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67. Courts recognize termination of parental rights as the "'family law equivalent of the death penalty in criminal cases.'" *In re Hayes*, 79 Ohio St.3d. 46, 48, 679 N.E.2d 680 (1979), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d

45 (6th Dist. 1991). Accordingly, "parents must be afforded every procedural and substantive protection the law allows." *Id.* quoting *Smith* at *id.*

## Standard of Review

{¶ 27} When reviewing the grant of permanent custody, we will not reverse a juvenile court's decision if that decision is supported by clear and convincing evidence. *In re R.H.*, 8th Dist. Cuyahoga No. 111748, 2023-Ohio-78, ¶ 27, citing *In re J.M.-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. "Clear and convincing evidence" is a degree of proof that is more than a "preponderance of the evidence" but does not rise to the level of certainty required to find something proven "beyond a reasonable doubt" as required in criminal cases. *In re R.H* at ¶ 27, quoting *In re K.S.*, 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶15.

## Sufficiency of the Evidence

{¶ 28} With that framework in mind, we look at Mother's third assignment of error. Under the third assignment of error, Mother challenges the sufficiency of the evidence. Sufficiency of the evidence is a question of law. As such, we look to determine whether some evidence exists in support of each element required for determining the matter. *In re A.W.*, 1st Dist. Hamilton No. C-220248, 2022-Ohio-3715, ¶ 20, citing *In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 7.

{¶ 29} Consequently, we begin our analysis by looking at the requirements for granting permanent custody to determine whether there was some evidence presented as to each element to support the juvenile court's grant of permanent

custody. The termination of parental rights is statutory and governed by R.C. 2151.414. *In re A.A.-V.*, 8th Dist. Cuyahoga No. 111257, 2022-Ohio-1947, ¶ 24, citing *In re G.L.*, 8th Dist. Cuyahoga No. 110284, 2021-Ohio-2273, ¶ 37, citing *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 provides a two-part test to determine whether to award permanent custody to a public children's service agency. *In re A.A.-V.* at ¶ 24, R.C. 2151.414.

**First Prong: R.C. 2151.414(B)(1)(a)-(e)**

{¶ 30} Regarding the first prong, permanent custody is warranted when the record establishes by clear and convincing evidence that one of the following five factors exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was

previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e)

{¶ 31} Under the first prong, only one of the factors must be present to support permanent custody. *In re G.W.*, 8th Dist. Cuyahoga No. 110938, 2022-Ohio-2581, at ¶ 34, citing *In re S.S.*, 8th Dist. Cuyahoga No. 109356, 2020-Ohio-3039, ¶ 28.

{¶ 32} In this matter, the juvenile court determined that the condition set forth in R.C. 2151.414(B)(1)(a) applied. We note, R.C. 2151.414(B)(1)(a) permits a grant of permanent custody of a child, if the court determines that the child is not abandoned or orphaned, has not been in the temporary custody of the agency for 12 months out of a consecutive 22 months *if* the court determines that the child cannot be placed with the parents within a reasonable time or should not be placed with the parents.

{¶ 33} It is undisputed that K.R. had been in the continuous, uninterrupted custody of CCDCFS since the initial removal on February 18, 2022, a period of six months. Pursuant to R.C. 2151.414(B)(1)(3), the child is considered in the custody of the agency from the earlier of the date the child is adjudicated pursuant to R.C. 2151.28 or the date that is sixty days after the removal from the home. In the instant case, the earlier date would have been sixty days from removal on February 18, 2022,

or April 20, 2022. Accordingly, consistent with R.C. 2151.414(B)(1)(a), the child had not been in the custody of the agency for 12 months at the time of the permanent custody hearing. We next turn to whether there was sufficient evidence presented that K.R. should not or could not be placed with Mother within a reasonable period of time.

{¶ 34} Regarding the second requirement under R.C. 2151.414(B)(1)(a), the court further found that K.R. could not be placed with one or both of his parents within a reasonable time. R.C. 2151.414(E) provides that if the juvenile court determines by clear and convincing evidence that one or more of the conditions listed exist as to each of the child's parents, "the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." (Emphasis added.) The court specifically cited R.C. 2151.414(E)(1), (2), (4), (11), (14), and (16) and indicated there was clear and convincing evidence in the record as to each section. Those provisions provide:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent

that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 35} Only one of these factors needed to be present to establish that the child could not or should not be placed back with the parents. For ease of analysis, although the juvenile court identified six factors, we will focus on only two, R.C. 2151.414(E)(1) and (11).

{¶ 36} R.C. 2151.414(E)(1) requires a finding that the parent has not remedied the issues that caused the child to be removed from the home. The record reflects that K.R. was removed due to the juvenile court's previous removal of Mother's older children and because Mother had not addressed the issues that caused their removal. During the siblings' case, Mother attended but did not complete substance abuse treatment on two occasions. During K.R.'s case, Mother likewise did not complete substance abuse treatment and had tested positive for alcohol a few weeks prior to the permanent custody hearing. During the siblings' case, Mother attended parenting classes on two occasions and yet did not demonstrate that she benefitted from the education she received when caring for R.A. shortly after surgery. Although Mother was progressing through parenting classes during K.R.'s case, it was her third round of parenting education. The history of this case establishes that Mother seems to have a bonded and loving relationship with K.R.; however, concerns about her ability to care for the child remain. Finally, although Mother was living with the child's maternal grandmother, the testimony at trial established that it was a temporary placement. Mother intended to obtain housing with the alleged father, L.R., a process that could take an additional eight to nine months.

{¶ 37} Accordingly, there was evidentiary support for the juvenile court's finding that R.C. 2151.414(E)(1) applied. There was sufficient evidence in the record to establish that Mother had not substantially remedied the conditions that caused the child to be removed from the home despite the provision of services from the

agency. Accordingly, there was sufficient evidence to support the trial court's finding that the requirements of R.C. 2151.414(E)(1) were met.

{¶ 38} R.C. 2151.414(E)(11) requires the court to review Mother's prior history with CCDCFS as part of its permanent custody decision. Under that section, the court may find the child could not or should not be returned to the parents where there is clear and convincing evidence that the parent's parental rights were involuntarily terminated as to a sibling of the child, and the parent has not established by clear and convincing evidence that "notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." It is undisputed that Mother's parental rights were involuntarily terminated with regard to her three other children. Accordingly, sufficient evidence in the record establishes the prior termination of parental rights.

{¶ 39} Nevertheless, R.C. 2151.414(E)(11) allows a parent to establish that despite the prior ruling, they can now provide a legally secure placement and adequate care for the health, welfare, and safety of the child. *In re L.O.*, 8th Dist. Cuyahoga No. 101805, 2015-Ohio-1458, ¶ 26, fn. 8. The record is largely silent as to whether Mother would have presently been able to provide for the child. Mother had not completed her mental health and substance abuse case plan goals. Additionally, she did not have stable, permanent housing or provisions for K.R.

{¶ 40} Accordingly, there was sufficient evidence to support the juvenile court's finding under R.C. 2151.414(E)(11). As both R.C. 2151.414(E)(1) and (11)

were established by some evidence in the record, the trial court's findings with respect to first prong of the permanent custody analysis are supported by sufficient evidence.

**Second Prong:  R.C. 2151.414(D)**

{¶ 41} The second prong requires the juvenile court to find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child.  The juvenile court's best interest determination under R.C. 2151.414(D) is reviewed under the abuse of discretion standard.  *In re G.L.*, 8th Dist. Cuyahoga No. 110284, 2021-Ohio-2273, at ¶ 44, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.  "'A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *Id.*, quoting, *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 60.

{¶ 42} We will first determine whether the juvenile court's best interest determination was supported by sufficient evidence.

{¶ 43} R.C. 2151.414(D) lists the factors the juvenile court should consider in determining whether permanent custody is in the best interest of the child:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the

temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 44} In the instant case, the record reflects that there was sufficient evidence to support the juvenile court's best interest determination. Testimony was presented as to provision (a), establishing that the child was bonded with Mother, however, the child was also well bonded with the foster mother, and his siblings and was thriving in the foster home; as to provision (b), when the GAL provided her recommendation that permanent custody was in K.R.'s best interest (See, *In re L.J.*, 8th Dist. Cuyahoga No. 111221, 2022-Ohio-2278, ¶ 53, considering the GAL's recommendation regarding permanent custody as part of the R.C. 2151.414(D)(1)(b) analysis is proper where the children are too young to express their wishes.); as to provision (c), testimony illustrated K.R. had been in the agency's custody since two days after his birth; as to provision (d), there was testimony as to K.R.'s placement and whether Mother had the present ability to provide for his care; and as to provision (e), there was evidence presented to support a finding that K.R. could not or should not be placed with Mother pursuant to R.C. 2151.414(E)(11).

{¶ 45} Accordingly, there was sufficient evidence to support the juvenile court's finding that permanent custody was in the best interest of the child.

{¶ 46} Accordingly, Mother's third assignment of error is overruled.

**The Weight of the Evidence**

{¶ 47} Under the second assignment of error, Mother challenges the weight of the evidence. The weight of the evidence "looks to the inclination of the greater amount of credible evidence to support one side rather than the other." *In re A.W.,* 1st Dist. Hamilton No. C-220248, 2022-Ohio-3715, at ¶ 20, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12. It is our responsibility when examining the weight of the evidence to consider the credibility of the witnesses, weigh all reasonable inferences, "determine whether — in resolving conflicts in the evidence — the juvenile court 'clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.'" *In re A.W.* at ¶ 20 quoting, *In re P. & H.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 7.

{¶ 48} Here, not only was the juvenile court's determination supported by sufficient evidence, it was supported by the greater weight of the evidence. Under the first prong of the permanent custody analysis, the juvenile court determined that R.C. 2151.414(B)(1)(a) applied. Under that section, the juvenile court needed to find that although the child had not been in the custody of the agency for a period of 12 months, the child should not be placed with the parent or could not be placed with the parent within a reasonable period of time as defined in R.C. 2151.414(E).

{¶ 49} Again, it was undisputed that K.R. met the first part of R.C. 2151.414(B)(1)(a), because he was only six months old when the permanent

custody hearing was held. Furthermore, with respect to the second part of the statute, the record established that one or more of the factors listed in R.C. 2151.414(E) were present, which if true, mandates the juvenile court to find that the child cannot or should not be placed with the parent. Here, the record established that Mother had not remedied the conditions that caused K.R. to be removed from the home, because she had not completed substance abuse treatment, had not addressed her mental health issues, and had not established she was able to meet K.R.'s basic needs, under R.C. 2151.414(E)(1). Furthermore, pursuant to R.C. 2151.414(E)(11), the record established that Mother's three oldest children had been placed into the permanent custody of the agency, and Mother did not present any evidence to establish that she was presently capable of providing a legally secure placement for K.R.

{¶ 50} R.C. 2151.414(E)(11) puts the burden of proof on the parent to establish that they can now provide a legally secure placement for a child, after a previous grant of permanent custody for a sibling. *In re L.O.*, 8th Dist. Cuyahoga No. 101805, 2015-Ohio-1458, at ¶ 26, fn. 8. While Mother had complied with aspects of her case plan, she had recently tested positive for alcohol during substance abuse treatment and was unable to complete the program. This was Mother's third attempt at substance abuse treatment. Additionally, as a result, she was unable to reach the mental health aspects of her case plan. Consequently, Mother's mental health issues have never been addressed. Although Mother appeared to have housing, the only evidence in the record is that it was unsuitable for K.R. Mother

did not counter the caseworker's testimony with any testimony via cross-examination or direct evidence to establish that the maternal grandmother's home would have been suitable. Finally, prior to K.R.'s birth, Mother did not obtain prenatal care, and the caseworker found that Mother and alleged Father had not made any preparation in their home for K.R.'s arrival; nor was there any testimony that they had made any preparations for K.R. by the time of the permanent custody hearing.

{¶ 51} Accordingly, the greater weight of the evidence established that permanent custody was proper under R.C. 2151.414(B)(1)(a).

{¶ 52} Similarly, regarding the second prong of the permanent custody test, the greater weight of the evidence established that permanent custody was in K.R.'s best interests under R.C. 2151.414(D)(1)(a)-(e). Under provision R.C. 2151.414(D)(1)(a), the child was doing well in the foster home and was bonded with both his siblings and foster mother. Under provision (b), the GAL recommended that K.R. be placed in the permanent custody of the agency based on her knowledge of Mother's previous history with the agency and K.R.'s current placement. Under provision (c), K.R. had been in the agency's custody, with the exception of two days, his entire life. Under provision (d), K.R. was in need of a legally secure placement and Mother had not established that she could meet K.R.'s needs, or that there was any other person who was a suitable caregiver for K.R. Finally, under provision (e), the record established that K.R. could not be placed with Mother within a reasonable period of time, pursuant to R.C. 2151.414(E)(11).

{¶ 53} Consequently, the greater weight of the evidence supported the juvenile court's findings that permanent custody was appropriate and in K.R.'s best interest.

{¶ 54} Accordingly, Mother's second assignment of error is overruled.

**Abuse of Discretion**

{¶ 55} Finally, Mother challenges the best interest determination in her first assignment of error, arguing that the juvenile court abused its discretion by failing to properly consider the best interest factors when finding permanent custody was appropriate. The juvenile court's best interest determination under R.C. 2151.414(D) is reviewed under the abuse of discretion standard. *In re G.L.*, 8th Dist. Cuyahoga No. 110284, 2021-Ohio-2273, at ¶ 44, citing *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, at ¶ 47. "'A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion.'" *In re* G.L. at ¶ 44, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 60. A court abuses its discretion when its attitude is "unreasonable, arbitrary, or unconscionable." *In re Ry.T.*, 8th Dist. Cuyahoga No. 111311, 2023-Ohio-12, ¶ 18, citing *In re N.N.*, 8th Dist. Cuyahoga No. 110443, 2021-Ohio-3931, ¶ 22, citing, *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 56} A juvenile court has considerable discretion when weighing the best interest factors. *In re G.L.* at ¶ 46, citing *In re D.A.* at ¶ 64. Although R.C. 2151.414(D)(1) requires the juvenile court to consider each relevant factor when making a permanent custody decision, "'there is not one element that is given

greater weight than the others pursuant to the statute.'" *In re G.L.* at ¶ 46 quoting, *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. The juvenile court must weigh all of the relevant factors under R.C. 2151.414(D)(1) and "'find the best option for the child.'"

{¶ 57} The operative word, however, is "consider." Although the Ohio Supreme Court encourages juvenile courts to discuss each factor and how they considered it, the court recognized that the juvenile courts are not required to do so. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31-32. As the court noted, "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *Id.* at ¶ 31.

{¶ 58} Mother focuses on one paragraph of the juvenile court's order, in which the court lists all the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Mother suggests that this laundry list of factors shows the juvenile court failed to appropriately consider the best interest factors, because some of these factors do not apply to the facts of this case.

{¶ 59} However, our review of the journal entry reveals that the juvenile court merely noted in its entry that it had considered all the factors in making its determination, as it is required to do. In the findings of fact, the juvenile court specifically listed the facts that supported its best interest determination, as follows:

> 1. The court found that R.C. 2151.414(E)(11) applied to the case, and that the child should not or could not be placed with Mother within a reasonable time. [R.C. 2151.414(D)(1)(e)].

2. The court explicitly detailed Mother's case plan and her lack of consistent progress on those goals. [R.C. 2151.414(D)(1)(d).]

3. The child has been in the continuous, uninterrupted custody of CCDCFS since the initial removal on February 18, 2022. [R.C. 2151.414(D)(1)(c).]

4. The child is placed in a foster home with three siblings who are currently in the permanent custody of CCDCFS and is thriving there. The child is doing well in placement and is bonded to the family. [R.C. 2151.414(D)(1)(a).]

5. The GAL * * * recommended granting permanent custody to CCDCFS as being in the child's best interests. She based this on the information that neither parent has taken steps to provide permanency to K.R. [R.C. 2151.414(D)(1)(b).]

{¶ 60} Consequently, we find that the juvenile court did not fail to appropriately consider the best interest factors when making its finding. Mother takes issue with the fact that some of the factors do not apply to this case. For instance, Mother suggests that the child was not in custody for 12 out of the past 22 months, so therefore, the juvenile court could not consider that as a factor in support of the best interest of the child. To the contrary, however, R.C. 2151.414(D)(1)(c) requires the court to consider "[t]he custodial history of the child, including" certain specific lengths of time the child has been in custody. Here, the court considered K.R.'s time in custody, the remainder of the section did not apply, and the court did not make those findings. Mother also takes issue with whether K.R., at six months, could express where he wished to live. While K.R. could not express his wishes, the GAL opined that permanent custody was in his best interest pursuant to R.C. 2151.414(D)(1)(b). Accordingly, the juvenile court properly considered the best interest factors and did not abuse its discretion.

**{¶ 61}** The first assignment of error is overruled.

**{¶ 62}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHAEL JOHN RYAN, J., CONCUR