[Cite as *In re M.F.*, 2024-Ohio-2272.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE M.F. :

                                     No. 113525

A Minor Child :

[Appeal by L.F., Father] :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-21904220

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Abraham Del Rio, III, Assistant Prosecuting Attorney, *for appellee.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Appellant L.F. ("Father") appeals from the juvenile court's decision awarding permanent custody of his minor child M.F. (d.o.b. 6/24/2019) to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On May 19, 2021, the agency filed a complaint for neglect, abuse, dependency, and temporary custody to the agency with respect to M.F. The complaint alleged that Mother engaged in acts of domestic violence in M.F.'s presence, and specifically that Mother assaulted Father[1] at a bus stop. The complaint further alleged that Father had a protection order against Mother as a result of these incidents, but Mother had violated the protection order.[2] The complaint further alleged that Father has been convicted of attempted disrupting public service, resisting arrest, and domestic violence against Mother, and that Father has failed to establish paternity.

{¶ 3} The agency also filed a request for predispositional temporary custody of M.F., which the juvenile court granted.

{¶ 4} As of the filing of the first case plan in June 2021, M.F. was placed in a foster home. Father's goals pursuant to the initial case plan were to complete domestic violence and anger management programs and to not engage in any acts of domestic violence or any type of verbal or physical abuse. According to the first case plan, Father was incarcerated in June 2021.

---

[1] At the time the complaint was filed, Father had not established paternity of M.F., and so was referred to as Alleged Father in the complaint and throughout the lower court proceedings until paternity was established in late 2021. For clarity, we will refer to Father as Father throughout this opinion.

[2] The complaint included additional allegations that were specific to Mother; because Mother is not a party to this appeal, our discussion of the facts and our analysis in this opinion will be limited to Father.

**{¶ 5}** On August 10, 2021, the agency filed an amended complaint.

**{¶ 6}** On August 13, 2021, the court held a telephonic adjudicatory hearing; both Mother and Father stipulated to the allegations of the amended complaint. On August 16, 2021, the court adjudicated M.F. neglected and dependent and M.F. was committed to the temporary custody of the agency.

**{¶ 7}** As part of the case plan, Father was referred for counseling, and according to the November 2021 semiannual review ("SAR"), his counseling sessions were to have begun on August 30, 2021. Father began a 12-week domestic violence program, as part of his probation, on October 23, 2021.

**{¶ 8}** On December 3, 2021, Father filed a motion for legal custody. The motion stated that Father had established paternity, has been engaged in and completed all services required by his case plan, and was ready, willing, and able to assume legal custody of M.F. Also on December 3, 2021, Father filed a motion to permit his wife, C.F., to attend his visitations with M.F.

**{¶ 9}** On December 9, 2021, the agency filed a brief in opposition to Father's motion to permit C.F. to attend visitation. The agency argued that visitation with both Mother and Father was supervised because of ongoing domestic violence issues between them. Specifically, Father has been convicted of violent crimes against Mother, and Mother "has acknowledged threatening Father and his wife, [C.F.], and is currently being charged with felonious assault against Father and menacing by stalking against [C.F.]" Further, the agency stated that Mother had informed CCDCFS that she does not want C.F. to participate in visitation. The

agency ultimately opposed Father's motion to permit C.F. to attend visitation because C.F. has no established relationship with M.F., because Mother does not want C.F. to attend visitation, and because C.F. is not a party to the case.

{¶ 10} The court held a hearing on February 15, 2022. Pursuant to a corresponding journal entry, the parties were in agreement that Father and C.F. "shall be referred to a parenting coach and have supervised visits" with M.F., and, therefore, Father's motion to permit C.F. to attend visitation was moot. The court held Father's motion for legal custody in abeyance.

{¶ 11} On February 24, 2022, the agency filed a motion to suspend visitation with C.F. The agency stated that subsequent to the February 15, 2022 hearing, CCDCFS learned that Father and C.F. "are currently involved in an investigation by Seneca County Department of Job and Family Services due to an incident of domestic violence which reportedly took place between Father and [C.F.] in January 2022."

{¶ 12} On February 28, 2022, the court granted the motion and suspended visitation between M.F. and C.F.

{¶ 13} On March 7, 2022, an updated case plan was filed as a result of these new domestic violence allegations.

{¶ 14} On May 3, 2022, CCDCFS filed a motion for a first extension of temporary custody. On May 10, 2022, the court granted the agency's motion and ruled Father's motion for legal custody moot.

{¶ 15} On September 21, 2022, CCDCFS filed a motion to terminate temporary custody and for an order vesting legal custody of M.F. to Mother and Father. On October 28, 2022, CCDCFS filed a motion to amend the dispositional prayer from "Termination of Temporary Custody" to "Legal Custody to Father." On December 29, 2022, the trial court denied the agency's motions and granted Mother's oral motion for a second extension of temporary custody to CCDCFS.

{¶ 16} On April 13, 2023, CCDCFS filed a motion to modify its temporary custody to permanent custody. On June 13 and July 23, 2023, Father filed motions for legal custody.

{¶ 17} On December 4, 2023, the court held a dispositional hearing.

{¶ 18} The court heard testimony from M.F.'s foster father D.W., who testified that M.F. had been in his care since March 19, 2021. D.W. testified that he lived with his wife and his six-year-old adopted son, C.W. D.W. described the relationship between C.W. and M.F. as a typical sibling relationship, in which they play together, argue, share a bedroom, and are generally inseparable. According to D.W., M.F. referred to D.W. as "Dad," D.W.'s wife as "Mom," and C.W. as his brother.

{¶ 19} D.W. testified that M.F. was diagnosed with eczema, allergies, and asthma, and has been hospitalized three times related to these conditions. D.W. testified that M.F. was enrolled in a Pre-K program, and he enjoys school and is doing well.

{¶ 20} D.W. testified that, with agency approval, he facilitated visitation with M.F. and both parents; the visits initially occurred weekly. D.W. testified that he tried to involve Mother and Father in M.F.'s life in other ways, such as informing them of doctor's appointments and inviting them to birthday parties. Father went to M.F.'s birthday party in 2022 and attended at least one of M.F.'s doctor's appointments.

{¶ 21} D.W. testified that from his observations of Father's visits with M.F., Father's interactions with M.F. were engaging and appropriate; D.W. described Father as thoughtful in his interactions with M.F.

{¶ 22} D.W. also testified that around March 31, 2023, Father's wife, C.F., sent him photos, including a photo of herself in which she was bloody and appeared to have been in some sort of physical altercation. D.W. testified that C.F. called him from jail in Seneca County and told him that she and Father had gotten into a fight, and shortly after the fight she was arrested.

{¶ 23} The court also heard testimony from agency social worker Carol Beck ("Beck"), who testified that she had been with the agency since June 2021, and had been assigned to this case since October 2021. Beck testified that CCDCFS first became involved with the family because of a report that on May 9, 2021, Mother attempted to run over Father with her car; M.F. was inside the vehicle during this incident.

{¶ 24} Beck testified that Father had seven or eight children, including M.F., and Father did not have custody of any of his other children because they were

removed from his custody in January 2021 by Iowa State Children and Family Services. Beck testified that the issues leading to the removal of Father's other children were domestic violence and substance abuse. Specifically, there were concerns about Father's substance abuse after one of the children tested positive for cocaine and concerns about domestic violence based on the volatile relationship between Mother and Father.[3] Beck specifically testified that some of Father's other children reported to Iowa and Ohio agency workers that they had nightmares after witnessing Father assault Mother.

{¶ 25} Beck testified that Father completed a domestic violence course in late 2021 or early 2022, but she did not believe that he benefitted from this because there have been allegations of abuse with C.F., Father's current wife, since his completion of those classes. Beck testified that C.F. sent her messages with photos and allegations of abuse from Father. Beck testified that these messages included medical discharge papers and coincided with other allegations of abuse against Father. Beck testified that charges were filed against Father in Seneca County related to domestic violence against C.F., but they have been dropped because C.F. subsequently recanted. Beck testified that although there had not been a domestic violence incident in approximately eight months, she remained concerned about domestic violence in Father's home. According to Beck, domestic violence was the most significant concern the agency had regarding Father.

---

[3] According to exhibits in the record, the children removed from Father's care by the Iowa agency were not Mother's biological children, but Mother was referred to as Father's domestic abuse victim by the Iowa court.

{¶ 26} With respect to substance abuse, Beck testified that Father tested positive for cocaine. Beck testified that while Father completed a substance abuse assessment and was not referred to any substance abuse programs, she believed this was because Father misrepresented his history of addiction, domestic violence, and criminal history during the assessment. Beck further testified that Father did complete a substance abuse treatment program and has not had a positive drug screen since November 2022; despite this, Beck testified that she did not believe that Father achieved his substance abuse case plan goals because he was still on probation for a July 2022 substance offense.

{¶ 27} Beck also testified that Father and C.F. were evicted from their former home in January 2023, but she had visited them at their current home and she had no concerns about the apartment. Beck testified that Father participated in visitation consistently, included unsupervised visitation, until unsupervised visitation was suspended in April 2023 due to domestic violence allegations. Beck testified that Father participated in a parenting course and benefited from this service.

{¶ 28} Finally, Beck testified that she visited M.F. weekly at his foster placement, and M.F. was doing well and had adapted to his foster family. Ultimately, Beck testified that she believed it would be in M.F.'s best interest to remain in the care of his foster family, and as such, the agency was requesting permanent custody.

{¶ 29} C.F. also testified briefly. After brief questioning, the court interrupted C.F.'s testimony in order to allow her to speak with a lawyer regarding potential self-incrimination issues in her testimony. Subsequently, the assistant prosecuting attorney for CCDCFS informed the court that C.F. stated she was uncomfortable testifying and left. As a result, the court struck C.F.'s testimony from the record.

{¶ 30} Finally, the guardian ad litem ("GAL") for M.F. testified. The GAL testified that based on their investigation, as well as the testimony and evidence, she believed it was in M.F.'s best interest that permanent custody to the agency be granted. Specifically, the GAL testified that M.F. had been out of the parents' respective care for over two years, and in that time, regardless of case plan services that have been identified, neither parent has been able to remedy the conditions that caused the agency to remove the child from their care initially. The GAL testified that while M.F. had a good bond with Mother and Father, he was still too young to clearly articulate his wishes.

{¶ 31} On December 7, 2023, the juvenile court issued a journal entry awarding permanent custody of M.F. to the agency and denying Father's motion for legal custody in which it made the following findings:

> The Court finds by clear and convincing evidence that pursuant to O.R.C. 2151.414(B)(1):
>
> d) The child has been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two month period.

The child's continued residence in or return to the home of [Mother] would be contrary to the child's best interest.

The Court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: For the Mother, Domestic Violence, Parenting, Mental Health and Substance Abuse Services. For the Father, Domestic Violence and Substance Abuse Services.

With respect to the best interest of the child, the Court has considered the following factors under O.R.C. 2151.414(D)(1):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster caregivers and out-of-home providers, and any other person who may significantly affect the child. *The child has a bond with Mother and Father. The child has a significant bond with the caregivers and their immediate and extended family. The child refers to the caregivers as mom and dad.*

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child. *The child is too young to express his wishes. GAL recommends permanent custody.*

(c) The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. *The child has been in the uninterrupted custody of CCDCFS for two and a half years, more than half his young life.*

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. *The child deserves a safe and stable home environment where his needs can be met and he can thrive, which cannot be achieved with either parent. No other relative has been identified as willing or able to care for the child.*

(e) Whether any factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child. *(E)(11) applies to Father-see exhibit 11.*

With respect to the best interest of the child, the court finds that pursuant to O.R.C. 2151.414(D)(2) that all of the following apply:

(a) The Court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in the agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Ohio Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of Section 2151.353 of the Ohio Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody.

As all of these sections apply, permanent custody is in the best interest of the child, and this Court as required by this statute, shall commit the child to the permanent custody of CCDCFS.

The Court finds by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to O.R.C. 2151.414(E):

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(11) The parent (Father) has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Ohio Revised Code, or under an existing former law of this state or any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *See Exhibit 11*.

\* \* \*

(16) Any other Factor the Court finds relevant: *Mother has three other kids who were removed from her care and placed in the legal custody of a relative. Father has 7 children not in his care.*

(Emphasis sic.)

{¶ 32} Father appeals, presenting two assignments of error for our review.

I. The trial court abused its discretion by granting permanent custody of M.F. to CCDCFS against the manifest weight of the evidence.

II. The trial court erred by permitting inadmissible hearsay testimony.

**Law and Analysis**

**I. Permanent Custody**

{¶ 33} Father's first assignment of error argues that the trial court's award of permanent custody to the agency was error because its findings were not supported by clear and convincing evidence and the decision was not in the best interest of the child. Specifically, Father argues that the court's termination of his parental rights was against the manifest weight of the evidence because the factors the trial court considered weighed against permanent custody.

{¶ 34} A parent has a fundamental interest in the care and custody of his children. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 20.

However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 35} On a motion for permanent custody, a juvenile court must satisfy the two-prong test set forth in R.C. 2151.414 before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence that any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply and that it is in the best interest of the child to grant permanent custody to the agency. *In re R.G.*, 8th Dist. Cuyahoga No. 108537, 2020-Ohio-3032, ¶ 19-20.

{¶ 36} Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 119 Ohio St.3d 538,

2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 37} The juvenile court must find by clear and convincing evidence that one of the following five conditions applies under R.C. 2151.414(B)(1):

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1).

{¶ 38} Here, the trial court satisfied the first prong of R.C. 2151.414(B)(1) by finding, pursuant to R.C. 2151.414(B)(1)(d), that M.F. had been in temporary custody of a public children services agency or private child placing agency for twelve or more months of a consecutive twenty-two month period. The trial court additionally found that M.F. cannot be placed with either parent within a reasonable time or should not be placed with either parent. "R.C. 2151.414(E) provides that if the juvenile court determines by clear and convincing evidence that one or more of the conditions listed exist as to each of the child's parents, 'the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.'" *In re K.R.*, 8th Dist. Cuyahoga No. 112036, 2023-Ohio-936, ¶ 34. (Emphasis added.) R.C. 2151.414(E) lists numerous conditions:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse of physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 39} Here, with respect to Father, the court specifically cited R.C. 2151.414(E)(1), (4), (11), and (16) in making its finding that M.F. could not be placed with either parent in a reasonable time or should not be placed with either parent. Following a thorough review of the record, we find that there was sufficient evidentiary support for these findings.

{¶ 40} With respect to Father's failure to remedy the conditions causing removal pursuant to R.C. 2151.414(E)(1), the record reflects that while Father engaged in case plan services related to substance abuse, he also lied about his prior history of substance abuse, domestic violence, and criminal history when undergoing a substance abuse assessment.  Moreover, Father had ongoing domestic violence issues related to both Mother and C.F.

{¶ 41}  With respect to Father's lack of commitment to M.F. pursuant to R.C. 2151.414(E)(4), while the record generally reflects consistent engagement in his case plan and consistent visitation with M.F., there were also several recent instances of Father missing visitation with M.F.

{¶ 42} With respect to R.C. 2151.414(E)(11), relating to Father's parental rights of other children being terminated, the record reflects that other children of

Father's were removed from his care following domestic violence and substance abuse concerns.

{¶ 43} Finally, with respect to R.C. 2151.414(E)(16), other relevant factors, the court found that Father had seven children not in his care, largely due to concerns that mirrored those at issue in this case.

{¶ 44} In light of the foregoing findings, all of which were supported by clear and convincing evidence, the trial court was required by statute to conclude that M.F. cannot be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 45} With respect to the second prong of the R.C. 2151.414 test, the court found that it was in the best interest of M.F. for the agency to be awarded permanent custody.

{¶ 46} R.C. 2151.414(D) provides a list of factors for the court to consider in determining the best interest of the child. Here, the court considered the factors in R.C. 2151.414(D)(1)(a) through (e):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Specifically, the court's journal entry acknowledged that while M.F. had a bond with Father, he also had a significant bond with his foster family; although M.F. was too young to express his wishes, the GAL recommended permanent custody; M.F. has been in uninterrupted agency custody for two and one-half years, more than half his life; and M.F. deserves a safe and stable home, which cannot be achieved with either parent.

{¶ 47} Our review of the record reveals that all of these findings are supported by clear and convincing evidence. Therefore, we cannot conclude that the trial court's permanent custody determination was an abuse of discretion. For these reasons, Father's first assignment of error is overruled.

## II. Hearsay Testimony

{¶ 48} In his second assignment of error, Father argues that the trial court erred by permitting inadmissible hearsay testimony. Specifically, Father argues that D.W.'s testimony regarding the text messages he received from C.F. alleging that Father assaulted her, together with Beck's testimony about allegations of current abuse by Father, were inadmissible hearsay.

{¶ 49} We generally review a trial court's evidentiary decisions for abuse of discretion; however, because Father did not object to either portion of the trial testimony he now challenges, he has waived all but plain error on appeal. An appellate court may recognize an error that an appellant waived only if it constitutes plain error. *In re T.C.K.*, 4th Dist. Washington No. 13CA3, 2013-Ohio-3583, ¶ 16. The Ohio Supreme Court has admonished courts to limit applying the plain error doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the court, seriously affects the basic fairness, integrity, or public reputation of the judicial process." *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

{¶ 50} This is not a case in which testimony from Beck or D.W. regarding C.F.'s communications with them seriously affected the basic fairness of the proceedings. Our review of the record shows that there was ample evidence, outside of the testimony regarding C.F.'s text messages, that supported the agency's significant concern regarding Father's history of domestic violence. Further, our review of the record in its entirety shows that the text messages from C.F. were at least partially corroborated by other evidence in the record. For these reasons, Father's second assignment of error is overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---
MARY EILEEN KILBANE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
FRANK DANIEL CELEBREZZE III, J., CONCUR